AO93
(Rev. 8/82)

SEARCH WARRANT ON WRITTEN AFFIDAVIT

ORIGINAL

| UNITED STATES DISTRICT COURT | DISTRICT CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

| UNITED STATES OF AMERICA  v.  THE PREMISES KNOWN AS:  12225 RICHFIELD DRIVE RANCHO CUCAMONGA, CA 91739 | DOCKET NO.        MAGISTRATE'S CASE NO.  TO:  ANY SPECIAL AGENT(S) WITH THE FEDERAL BUREAU OF INVESTIGATION OR ANY OTHER AUTHORIZED OFFICER  NOTE CHANGES MADE BY THE COURT. |
|---|---|

*Affidavit(s) having been made before me by the below-named affiant that he/she has reason to believe that on the premises known as*

**SEE ATTACHMENT A**

*in the Central District of California*

*there is now being concealed certain property, namely:*

**SEE ATTACHMENT B**

*and as I am satisfied that there is probable cause to believe that the property so described is being concealed on the person or premises above-described and the grounds for application for issuance of the search warrant exist as stated in the supporting affidavit(s).*

*YOU ARE HEREBY COMMANDED to search on or before ___ ten (10) days _____ (not to exceed 10 days) the person or place named above for the property specified, serving this warrant and making the search (in the daytime--6:00 A.M. to 10:00 P.M.) and if the property be found there to seize it, leaving a copy of this warrant and receipt for the property taken, and prepare a written inventory of the property seized and promptly return this warrant to ___ the duty U.S. Magistrate Judge _____ as required by law.*

| NAME OF AFFIANT  FBI SA JOHN W. PAE | SIGNATURE U.S. MAGISTRATE JUDGE **  HON. PAUL L. ABRAMS | DATE/TIME ISSUED  5:30 p.m.  MAY 7, 2008 |
|---|---|---|

*If a search is to be authorized "at any time in the day or night" pursuant to Federal Rules of Criminal Procedure Rule 41(c), show reasonable cause therefor.*
**United States Judge or Judge of a State Court of Record.*

AUSA:BLH

## RETURN

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|
| | | |

INVENTORY MADE IN THE PRESENCE OF

INVENTORY OF PROPERTY TAKEN PURSUANT TO THE WARRANT

## CERTIFICATION

*I swear that this inventory is a true and detailed account of all the property taken by me on the warrant.*

*Subscribed, sworn to, and returned before me this date.*

| U.S. JUDGE OR MAGISTRATE | DATE |
|---|---|

**ATTACHMENT A**

**PREMISES TO BE SEARCHED**

The SUBJECT PREMISES is a two-story house located at 12225 Richfield Drive, Rancho Cucamonga, California 91739. The SUBJECT PREMISES is an L-shaped house with beige stucco walls, beige garage doors, and green window awnings. There is a driveway on the northwest side of the SUBJECT PREMISES, and there are two attached garages, one of which is a two-car garage, and the other of which is a single-car garage. The front door of the SUBJECT PREMISES and the two-car garage door face north, and te singe-car garage door faces west. The SUBJECT PREMISES is the sixth house west of Day Creek Boulevard and the third house east of Prospect Place, and is located on the south side of Richfield Drive. The numbers "12225" appear in black on a rectangular box located on the first floor, upper right corner of the two-car garage sidewall. In addition, the numbers "12225" are painted in place on the eastside curb of the driveway entrance to the SUBJECT PREMISES.

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

The items to be seized are items constituting evidence, instrumentalities, and fruits of violations of the EAA, 50 U.S.C. § 2401, et seq., the IEEPA, 50 U.S.C. §§ 1701-1706, 18 U.S.C. § 545 (smuggling goods into the United States), and 18 U.S.C. § 2320 (trafficking in counterfeit goods), by JJE, MICHAEL ZHANG and MINGQI ZHANG, found at the SUBJECT PREMISES. Records and documents to be seized are those dated from January 1, 2003 to the present. The items to be seized are particularly described below and are listed in Attachment B to the search warrant.

a. Export control documents as defined in the Export Administration Regulations ("EAR"), including export licenses, export license applications and related correspondence, waybills, bills of lading, manifests, shipper's letters of instruction, end-user certificates, Shipper's Export Declarations ("SEDs"), memoranda, notes, correspondence, contracts, invitations to bid, books of account, financial records, and applications for international import certificates for exports of commodities from the United States, or involving a United States Person, or any document issued by a United States government agency in relation to the export of electronic

components from the United States or involving a United States Person.

b.    Any and all documents and records demonstrating knowledge of export procedures and requirements, knowledge of export brokering procedures and requirements, and export licensing procedures and requirements, embargoed or sanctioned countries, prohibited countries, or prohibited exports, including regulations and statutes, training manuals, letters, correspondence, notes, export licenses, export license applications, SEDs, waybills, advertisements, brochures, newsletters, research materials, periodicals, and any documents identifying any export training or programs in place or received by the company or individuals of the company, and any correspondence with the United States Department of State ("DOS"), United States Department of Treasury, the DOC, or any agency thereof.

c.    Counterfeit electronic components or money ledgers, counterfeit goods distribution or customer lists, counterfeit goods supplier lists, correspondence, notation logs, receipts, journals, books, pay and owe sheets, records, and other documents noting the price, quantity, dates, and/or times when counterfeit electronic components were purchased, possessed, transferred, distributed, sold or concealed.

d.    Documents and records relating to the import,

export, re-export, transshipment, purchase, transportation, storage and sale of export-controlled or counterfeit electronic components, including commodity technical specifications, product manuals, invoices, invitations to bid, books of account, receipts, business records, financial records, payment records, wire transfer records, sales contracts, sales orders, purchase orders, delivery orders, journals, distribution lists, billing invoices, check stubs, cancelled checks, accounting records, customer files, bills of lading, airbills, trucking orders, insurance policies or certificates, packing lists, general ledgers, subsidiary ledgers, letters of credit, price lists, customer lists or other records of recipients, shipping papers, notes, memoranda, correspondence, e-mails, reports, data, contracts, agreements, any documentation evidencing affiliation or business relationships with or listing distributors, suppliers, or manufacturers of electronic components, any indicia of use of the mails or interstate or international commercial carriers such as envelopes, packages, mailing labels, shipping records, and receipts, and documents filed with DHS Customs and Border Protection ("CBP") in connection with the import or export of electronic components, including United States Customs Entry Forms 3461 and 7501, Entry Summaries, United States Customs Manifests of Goods, or United States Customs Declaration Forms.

e.   Bank account records, wire transfer records, bank statements and records, money drafts, letters of credit, safety deposit keys and records, money wrappers, money containers, income tax returns, and financial transfers of JJE, MICHAEL ZHANG, or MINGQI ZHANG that reflect the money generated from the sale of export-controlled or counterfeit electronic components.

f.   Telephone paging devices, beepers, mobile phones, car phones, answering machines and tapes, and other communication devices, which evidence participation in a conspiracy to illegally export controlled items or a conspiracy to traffic in counterfeit goods.

g.   Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, photographs, audio and video tapes, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in exporting controlled items or counterfeit goods trafficking activities.

h.   Records, items, and documents reflecting travel for illegally exporting controlled items or participating in counterfeit-goods trafficking, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps, and written directions to locations.

i.   Indicia of occupancy, residency, control and/or ownership of the SUBJECT PREMISES and things described in the

search warrant, such as utility bills, telephone bills, loan payment receipts, rent documents, canceled envelopes and keys, photographs, and bank records.

j.   Apparently counterfeit electronic components, labels, marks, letters of authenticity, documents, any related packaging, and any authentic electronic components that may have been used as samples for the manufacture of counterfeit components.

k.   Records or notes of off-site storage facilities owned, used, or operated by JJE, MICHAEL ZHANG or MINGQI ZHANG.

l.   Records showing ownership, dominion, or control over JJE, storage locations, or associated businesses.

m.   As used above, the terms records, documents, programs, applications or materials includes records, documents, programs, applications or materials created, modified, or stored in any form.

n.   In searching for data capable of being read, stored, or interpreted by a computer, law enforcement personnel executing this search warrant will employ the following procedure:

(1)   Upon securing the premises, law enforcement personnel trained in searching and seizing computer data (the "computer personnel") will make an initial review of any computer equipment and storage devices to determine whether

these items can be searched on-site in a reasonable amount of time and without jeopardizing the ability to preserve the data contained on the computer devices.

(2)   If the computer devices can be searched on-site in a reasonable amount of time and without jeopardizing the ability to preserve data, they will be searched on-site, and a computer device will be seized only if the search reveals it to contain any data that falls within the list of items to be seized set forth herein.

(3)   If the computer devices cannot be searched on-site in a reasonable amount of time and without jeopardizing the ability to preserve data, then the computer personnel will determine whether it is practical to copy the data contained on the computer devices during the execution of the search in a reasonable amount of time without jeopardizing the ability to preserve that data.   If it is practical, and the computer devices cannot be searched on-site in a reasonable amount of time and without jeopardizing the ability to preserve data, the computer personnel will make a copy of the data contained on each computer device (a "data image") during the execution of this search and shall seize the data images rather than the computer devices themselves.

(4)   If the computer personnel determine it

is not practical to perform an on-site search of the computer devices or make an on-site data image within a reasonable period of time and without jeopardizing the ability to preserve data, then the computer devices will be seized and transported to an appropriate law enforcement laboratory for review.  The computer devices will be reviewed by appropriately trained personnel in order to extract and seize any data that falls within the list of items to be seized as set forth herein.

(5)  In searching the computer devices or data images, the computer personnel may examine all of the data contained in the computer devices or data images to view their precise contents and determine whether the data falls within the items to be seized as set forth herein. In addition, the computer personnel may search for and attempt to recover "deleted," "hidden" or encrypted data to determine whether the data falls within the list of items to be seized as set forth herein.

(6)  If the computer personnel seize the computer devices pursuant to subparagraph iii above, the computer personnel will search the computer devices or data images within a reasonable amount of time not to exceed 20 days from the date of execution of the warrant.  If, after conducting such a search, the case agents determine that a

computer device or data image contains any data falling within the list of items to be seized pursuant to this warrant, the government will retain the computer device or data image; *for an additional 20 day period of a* otherwise, the government will return the computer device or delete the data image.  If the government needs additional time to determine whether the data on the computer devices or data images falls within any of the items to be seized pursuant to this warrant, it may seek an extension of the time period from the Court within the original ~~sixty~~ *forty*-day period from the date of execution of the warrant. *Once any computer or data image search is completed, only those seizable items shall be retained, and the remainder shall be returned, or the data image deleted.*

o.   In order to search for data that is capable of being read or interpreted by a computer, law enforcement personnel will need to seize and search the following items, subject to the procedures set forth above:

(1)   Any computer equipment and storage device capable of being used to commit, further or store evidence of the offenses listed above;

(2)   Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners;

(3)   Any magnetic, electronic or optical

storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, cellular telephones, and personal digital assistants;

(4)   Any documentation, operating logs, and reference manuals regarding the operation of the computer equipment, storage devices or software;

(5)   Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communications with the computer hardware, storage devices or data to be searched;

(6)   Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

(7)   Any passwords, password files, test keys, encryption codes, or other information necessary to access the computer equipment, storage devices or data.