1  THOMAS P. O'BRIEN
   United States Attorney
2  CHRISTINE C. EWELL
   Assistant United States Attorney
3  Chief, Criminal Division
   BONNIE L. HOBBS (California Bar No. 208525)
4  Assistant United States Attorney
        1300 United States Courthouse
5       312 North Spring Street
        Los Angeles, California 90012
6       Telephone:  (213) 894-4447
        Facsimile:  (213) 894-6436
7       Email:      bonnie.hobbs@usdoj.gov

8  Attorneys for Plaintiff
   UNITED STATES OF AMERICA

9

10               UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,    ) No. CR 09-31-R
                                 )     CR 09-32-R
13            Plaintiff,         )
                                 ) FINDINGS AND ORDER DENYING
14            v.                 ) DEFENDANT'S MOTION TO SUPPRESS
                                 ) EVIDENCE
15  MICHAEL MING ZHANG,          )
     aka "John Zhang,"           ) Motion Hearing Date: 5/11/09
16   aka "John Wen,"             ) Motion Hearing Time: 1:30 pm
                                 ) Location: Courtroom of the
17            Defendant.         ) Honorable Manuel L. Real
                                 )
18  _____  )

19       Defendant Michael Ming Zhang's Motion to Suppress Evidence

20  came on for hearing on May 11, 2009.  The Court has reviewed the

21  materials submitted by the parties, including, but not limited

22  to, the following: 1) Defendant's Motion to Suppress Evidence

23  filed on April 20, 2009, and the Declaration of Thomas Kielty,

24  together with the exhibit thereto, filed concurrently therewith;

25  2) the Government's Opposition to Defendant's Motion to Suppress

26  Evidence filed on April 27, 2009, and the Declarations of Bonnie

27  L. Hobbs and Special Agent Nathan N. Surface, together with

28  exhibits, filed concurrently therewith; and 3) Defendant's Reply

1  to Government's Opposition to Suppress Evidence filed on May 8,

2  2009.  The Court also has considered the testimony of

3  defendant and the argument of both parties at the hearing on May

4  11, 2009.  Having considered all of these items, the Court hereby

5  makes the following findings and DENIES defendant's motion for

6  the reasons set forth below.

**II.**

**FINDINGS OF FACT**

9       Having considered the Declaration of Thomas Kielty proffered

10  by defendant and exhibit thereto; the Declarations of Bonnie

11  L. Hobbs and Special Agent Nathan N. Surface proffered by the

12  government and exhibits thereto; and the testimony of defendant

13  at the hearing on May 11, 2009, the Court hereby FINDS the

14  following facts:

15       1.    On May 7,2008, at approximately 5:30 p.m., the Federal

16  Bureau of Investigation ("FBI") obtained a search warrant for the

17  premises located at 12225 Richfield Drive, Rancho Cucamonga,

18  California 91739 (the "Subject Premises").  The warrant was

19  issued by United States Magistrate Judge Paul L. Abrams at 5:30

20  p.m.  The warrant commanded Special Agents of the FBI or any

21  other authorized agents to search the Subject Premises on or

22  before ten days after the issuance of the warrant, during the

23  "daytime-6:00 A.M. to 10:00 P.M."  Federal agents applied for the

24  warrant after a state search warrant had been served on the

25  Subject Premises earlier the same day.

26       2.    The federal warrant sought evidence of violations of

27  United States export laws and laws relating to smuggling and

28  trafficking in counterfeit goods.  Specifically, the federal

1  warrant listed as items to be seized, among other things,

2  counterfeit electronic components and authentic electronic

3  components that may have been used as samples for the manufacture

4  of counterfeit components, as well as labels and packaging for

5  counterfeit components.  The state search warrant also sought

6  counterfeit items, primarily "Sony" products.

7      3.    The Subject Premises was the residence of defendant,

8  from which defendant also ran his business, J.J. Electronics, and

9  consisted of a house and two attached garages.  The team

10 searching the Subject Premises consisted of approximately ten

11 Special Agents of the FBI, and also included agents from other

12 federal agencies, including the Defense Criminal Investigative

13 Service, the U.S. Postal Inspection Service, the Department of

14 Commerce, and Immigration and Customs Enforcement.

15     4.    The agents who obtained the warrant drove the warrant

16 from downtown Los Angeles to the Subject Premises in Rancho

17 Cucamonga.  They arrived in Rancho Cucamonga with the warrant at

18 approximately 7:00 p.m.  After they arrived with the warrant, all

19 of the agents on the search team read the warrant and prepared to

20 execute it.

21     5.    At approximately 8:50 p.m., the search team assembled

22 outside the Subject Premises.  At approximately 9:25, the

23 searching agents entered the residence, presented the search

24 warrant to defendant, who read the search warrant, and began the

25 search.

26     6.    Defendant, his wife, and their young twin sons

27 were present during the search.  At defendant's request, agents

28 searched the children's bedroom and the surrounding rooms first,

1 and the children were permitted to remain in their room

2 throughout the course of the search.  The children were asleep in

3 their beds by 11:00 p.m.  As needed throughout the entire search,

4 Mrs. Zhang was permitted to attend to her personal needs while

5 accompanied by an agent.  Mr. Zhang remained seated on a couch in

6 the living room during most of the search, and was also permitted

7 to attend to his personal needs while accompanied by an agent.

8        7.    The Subject Premises included an office, a single

9 garage containing inventory of electronic components, and a room

10 containing packaging materials and additional electronic

11 components, among other rooms.  The garage contained shelves

12 along all four walls that contained thousands of electronic

13 components.  The packaging room contained additional components

14 and a large quantity of packaging materials for the components.

15 The office contained computers and file cabinets full of business

16 documents.

17        8.   The majority of the agents' time during the search was

18 spent in the garage or in efforts to organize and package

19 components taken out of the garage.  First, searching agents

20 sorted through the components to determine whether they were

21 within the scope of the warrant, and photographed the evidence.

22 Then the agents attempted to organize the components, which

23 numbered in the thousands, and determined how best to package the

24 components for transportation to an evidence facility.  Due to

25 the vast amount of components, agents had to obtain additional

26 boxes and other packaging material in which to transport the

27 components.  The quantity of components exceeded the capacity of

28 the vehicles the agents had driven to the premises, so the agents

1 located additional transportation for the evidence.  The agents

2 began transporting evidence off of the Subject Premises once it

3 was packaged and logged.  While the initial transportation of

4 evidence took place, the search within the Subject Premises

5 continued.  Two vans and a truck made several trips back and

6 forth from the Subject Premises, so that the agents could leave

7 the Subject Premises as soon as possible.

8     9.   Agents recovered approximately one hundred boxes of

9 microchips from the Subject Premises, containing thousands of

10 electronic components.

11    10.   Agents concluded the search at approximately 4:00

12 a.m., immediately after all of the evidence, including all of the

13 electronic components, had been transported from the Subject

14 Premises.

### III.

### CONCLUSIONS OF LAW

**A.   A Search that Commences Before 10:00 p.m. and Continues After 10:00 p.m. Does Not Violate Rule 41**

The Fourth Amendment prohibits "unreasonable searches and seizures."  While nighttime searches of private homes raise special concerns relating to invasion of privacy, see Jones v. United States, 357 U.S. 493, 498-99 (1958) (observing that "it is difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home that occurred in this instance"), nighttime searches are not per se unreasonable. United States v. McCarty, 475 F.3d 39, 43 (1st Cir. 2007). Courts apply a traditional reasonableness test to the search, in which the court assesses the totality of the circumstances, including "the scope of the particular intrusion, the manner in

1 │ which it is conducted, the justification for initiating it, and

2 │ the place in which it is conducted." Id. (quoting United States

3 │ v. Cofield, 391 F.3d 334, 336 (1st Cir. 2004)).  A search that

4 │ begins during the daytime, but continues through the nighttime,

5 │ is not necessarily unreasonable.  Id. at 44 (citing United States

6 │ v. Young, 877 F.2d 1099, 1105 (1st Cir. 1989)).

7 │      Federal Rules of Criminal Procedure Rule 41 provides that a

8 │ warrant to search for and seize property issued thereunder must

9 │ command the officer to execute the warrant during the daytime,

10 │ unless the judge for good cause expressly authorizes execution at

11 │ another time.  Fed. R. Crim. P. 41(e)(2)(A)(ii).  "Daytime" is

12 │ defined as the hours between 6:00 a.m. and 10:00 p.m.  Fed. R.

13 │ Crim. P. 41(a)(2)(B).  Courts have held that a search that begins

14 │ in the "daytime" pursuant to Rule 41, that is, before 10:00 p.m.,

15 │ and continues through the nighttime, is not unreasonable, and in

16 │ such circumstances have refused to suppress evidence seized after

17 │ 10:00 p.m.  See McCarty, 475 F.3d at 44 (holding that search that

18 │ continued until 10:35 p.m. was not unreasonable and concluding

19 │ that district court was correct to have denied defendant's motion

20 │ to suppress evidence collected from his apartment); United States

21 │ v. Squillacote, 221 F.3d 542, 556 (4th Cir. 2000) (stating that

22 │ because search was commenced in daytime, federal agents

23 │ reasonably could have believed that it was proper to continue

24 │ search into night); United States v. Dickerson, 195 F.3d 1183,

25 │ 1187 (10th Cir. 1999) (finding that search where police arrived

26 │ at 9:47 p.m. and secured defendant and other individuals outside

27 │ the house in less than a minute was reasonable); Young, 877 F.2d

28 │ at 1105 (stating that court was aware of no legal reason why

1   search could not continue at night or of anything in Rule 41 or

2   Constitution that forbids continuing search at night, at least

3   when doing so is reasonable); United States v. Schoenheit, 856

4   F.2d 74, 77 (8th Cir. 1988) (holding that when forty-five minute

5   delay due to detective wandering too close to house prevented

6   warrant from being executed before 10:00 p.m., suppression of

7   evidence was not warranted where defendant was not awakened in

8   the middle of the night while in bed and answered door of own

9   volition); United States v. Burgard, 551 F.2d 190, 193 (8th Cir.

10  1977) (holding that searches which began during daytime and

11  continued into night have been held not to violate Rule 41 and

12  seeing no merit in suppressing fruits of search simply because

13  search was still in progress at 10:00 p.m. and was not completed

14  before 11:00 p.m.); United States v. Woodring, 444 F.2d 749, 751

15  (9th Cir. 1971) (holding that requirement of daylight service of

16  warrant, which did not arrive at premises until hour and a half

17  after sunset, was sufficiently satisfied by fact that officers

18  initiated search during daylight and left copy of warrant on

19  premises during course of search, and citing United States v.

20  Joseph, 278 F.2d 504 (3d Cir. 1960)); Joseph, 278 F.2d at 505

21  (holding that conduct of searching officers was within

22  authorization of warrant where actual searching began at 4:00 in

23  afternoon and was not completed until after 10:00 at night).

24      The cases cited by defendant in his Motion can be

25  distinguished from this case.  In United States v. Raidl, 250 F.

26  Supp. 278 (N.D. Ohio 1965), the warrant at issue, in contrast to

27  the warrant to search the Subject Premises in this case, was a

28  nighttime warrant.  The district court in Raidl found that there

7

1 | was no basis in law for a nighttime warrant, and the fact that
2 | the warrant was executed before nightfall did not render valid an
3 | otherwise invalid warrant.  In <u>United States v. Boyance</u>, 398 F.2d
4 | 896 (3d Cir. 1968), the judge issued a daytime search warrant at
5 | 1:00 a.m., and officers made entry at 2:30 a.m., in violation of
6 | the clear terms of the warrant.  Finally, in <u>United States v.</u>
7 | <u>Merritt</u>, 293 F.2d 742 (3d Cir. 1961), the court found that a
8 | daytime search warrant for narcotics had not been executed until
9 | nighttime, and that the nighttime execution was not justified by
10 | the fact that the United States Commissioner who issued the
11 | warrant was empowered under the Narcotic Control Act to provide
12 | for service at any time of the day or night, when he had not done
13 | so in that case.

14 |     In this case, the warrant was served prior to 10:00 p.m.,
15 | which falls within the definition of "daytime" as found in Rule
16 | 41(a)(2).  The fact that the search continued beyond 10:00 p.m.
17 | does not invalidate the search.  The search did not violate the
18 | Fourth Amendment.

19 | **B.  The Search of the Subject Premises After 10:00 p.m. was a**
20 | **Reasonable Continuation of the Search Before 10:00 p.m., and**
    | **Did Not Violate the Fourth Amendment**

21 |     Courts have applied the traditional reasonableness test to
22 | daytime searches begun prior to 10:00 p.m. and continuing past
23 | 10:00 p.m., in which the court assesses the totality of the
24 | circumstances, including "the scope of the particular intrusion,
25 | the manner in which it is conducted, the justification for
26 | initiating it, and the place in which it is conducted."  <u>McCarty</u>,
27 | 475 F.3d at 43 (quoting <u>Cofield</u>, 391 F.3d at 336).  The
28 | reasonableness inquiry for such searches can also be framed as an

1  inquiry as to whether the search after 10:00 p.m. is a reasonable

2  continuation of the search begun prior to that time.  <u>Joseph</u>, 278

3  F.2d at 505 (holding that evidence did not show that search made

4  after nightfall was more than reasonable continuation of search

5  which began in afternoon).  Some of the factors courts have

6  considered in conducting a reasonableness inquiry for such

7  searches include whether the defendant was awakened in the middle

8  of the night while in bed and answered the door of his own

9  volition, <u>Schoenheit</u>, 856 F.2d at 77 and <u>McCarty</u>, 475 F.2d at 44;

10 the amount of contraband found, the difficulties of finding it,

11 and evidence of special inconvenience to residents, <u>Young</u>, 877

12 F.2d at 1105; the degree of freedom allowed the defendant during

13 the search and whether the search was conducted in a professional

14 manner, <u>McCarty</u>, 475 F.2d at 44; and the degree of intrusion and

15 interference with the property, <u>United States v. Gagnon</u>, 635 F.2d

16 766, 769 (10th Cir. 1981).

17      An analysis of the totality of the circumstances surrounding

18 the search of the Subject Premises in this case indicates that it

19 was not unreasonable for the search to continue until 4:00 a.m.

20 Defendant and his family were not roused out of bed for the

21 execution of the warrant.  Defendant, his wife, and his children

22 were allowed to move about the house during the search.  The

23 quantity of physical evidence found during the search required

24 significant time to catalog and collect.  Defendant has not

25 alleged that any special inconveniences arose because of the

26 search.

27

28

1

**III.**

2

**ORDER**

3          Based upon the findings and conclusions set forth above,

4   defendant's motion to suppress evidence is DENIED.

5   IT IS SO ORDERED.

6

7

8   DATED: June 8, 2009          _____
                                 HONORABLE MANUEL L. REAL
9                                UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10